The next case today is Oriental Bank v. Builders Holding Co., Corp. et al. Appeal No. 21-1299. Attorney Fernandez-Rodriguez, please introduce yourself for the record and proceed with your argument. May it please the Court. My name is Cristina Fernandez-Rodriguez. I am here on behalf of Appellant Oriental Bank. I respectfully request to reserve two minutes for rebuttal. Yes. Okay. And, Counsel, let me ask you so I don't interrupt you when you start. Oriental's position, you're not, on behalf of Oriental, you're not contesting that the monies involved in this case were deposited in error, as that term is used under Puerto Rico. Am I correct? We are discussing that the, okay, the money was deposited correctly into Builders' account. That's what we're saying. Okay. So you disagree that it was deposited in error, correct? Correct. Okay. So please proceed. Thank you. When the debtor Builders Holding Company received a payment from the Appellate Puerto Rico Financing Authority under a contract, Appellant set off a portion from this payment to pay an outstanding balance that Builders Holding owed to Appellant. Appellant acted in accordance with its statutory right under Section 9-340 of the Puerto Rico's Commercial Transactions Act and its contract with the debtor. This right is superior to any secured creditors and should be strictly applied in cases where the loan is commercial in nature and not a consumer loan. The bankruptcy court disagreed, ordering Appellant to turn over the set-off amount to Appellate Mapfrit and the Chapter 7 Commercial Transactions Act, finding, first, the payment to Builders and depositing its account at a Yentl bank was made in error, and second, Appellant's right to set-off was subordinated to that of Appellate Mapfrit. Both findings are erroneous. The district court affirmed the bankruptcy court's findings. This order was entered in direct contradiction to the statutory law and protections that the Commercial Transactions Act provided the banks through the in error doctrine does not apply to the present case. The Financing Authority did not meet the requirements set forth in Ela v. Crespo-Torres. First, Financing Authority made the payment to discharge its obligation to Builders. Second, there was just cause as governed by the contract executed between the parties, and there was no dispute as to the amount. Third, the fact that Financing Authority deposited the... We're trying to figure out how to think about this payment in doctrine. In answer to Judge Helpy's question, are you disputing... Forget that the money was deposited in a bank account. Suppose the money was just paid to the deposit holder. Check was handed to him from the Financing Authority. Can you win if the Financing Authority made a mistake in paying the deposit holder? If the check was deposited, if Builders... Not deposit. Forget deposit. They just received the check, and they have it in hand, and they haven't done anything with it? I want to just know if before they've deposited, the Financing Authority should not have made that payment. It was plainly an error. Can you still win if the money is then deposited in the bank? Yes. Okay, so you don't care whether the Financing Authority made a mistake paying the deposit holder, correct? Exactly. Okay, so now given that, given that, why does the payment error doctrine not apply in your view to this case? And I'll just give you two possibilities, and you tell me what your theory is. Is the idea that the bank was not paid, and therefore there simply was no payment and error to the bank? If that's not the theory, what's the theory? The bank was not paid. Who was paid was Builders, and Builders received the money, even if they would have received a check. Say that they received a check, and they went physically and deposited the check into the account. Even if they had instructions to... The Financing Authority, the deposit holder, the account holder deposits a check. He's not paying the bank. There's simply no payment to the bank, and therefore the payment error doctrine just cannot apply. Is that the idea? Exactly, exactly. What's your best... I haven't... Maybe you don't either. I haven't seen a case in which the payment and error doctrine gets into this peculiarity of a direct deposit to a bank. No, there aren't any cases. I have searched everywhere, and I haven't found any, especially after the enactment of the article 9. What's the standard way these cases come up is that the check is paid to the recipient, essentially. It's not directly deposited in their account. Exactly, exactly. If it would have been a check, and then builders didn't take it to the bank and deposit it, that would have been a different story because, obviously, Oriental would not have had control over the money. And even if he had then deposited that check, your position is, well, that's not a payment to the bank, so the doctrine has no application. At that point, the only payment is to the account holder. Exactly. If you're right about all of that, as I understand it, the only rulings below only address this payment and error issue. But there seems to be this lurking issue if the payment and error doctrine does not apply as to whether there's this equitable rule versus legal rule as to what should happen. There's been no analysis of that by any of the courts below. So is the right approach for us just to vacate and remand? Because it seems as if Puerto Rico law is not clear as to which of those rules apply. Well, this involves a special law which was enacted after the builders and MAFRE contract. So even if they allege that they had security, prior security, it would not apply because the enactment of the law was afterward. And MAFRE did not do anything to obtain control over the account. So any money that would be deposited into builder's account... But am I right? The district court seemed to think that absent the payment and error doctrine, he would have to reach this issue about the legal rule versus the equitable rule, unless I read his opinion. It should be the legal rule, yes. Yeah. So you're just arguing that the legal rule should apply, but the district court was of the view that that's an unsettled question of law under Puerto Rico law. And I take it you don't have any authority under Puerto Rico law that resolves it, right? No, there isn't any. So even if you're right on the payment and error doctrine point, wouldn't the right approach for us be to vacate and remand so that that issue then can be resolved and considered in the first instance by courts that haven't yet considered it? It could be. It is definitely a legal issue that should be discussed by the courts. Okay. Okay. So as I was saying, the payment and error does not apply in this case. The payment was meant for builders. It was deposited into its account. And as soon as it builders line of credit, the financing authority made the transfer as it usually did and builders received it in its account where it had the ability to draw checks at will. And in fact, it did. Most importantly, the alleged error should have no impact on the bank's statutory security interest. The bank does not benefit from the relationship between Apple East. It was an instant secured creditor looking to collect on a debt, the Puerto Rico transactions act, nor the uniform commercial code discriminate the origin of funds. Once it has been deposited into the commercial account, the only exception is when there is a release granted by the bank in an authenticated record. This was not obtained here. A special law on a subject matter, such as the commercial transactions actions prevail over any other statute of general character. The deposit accounts fall within the scope of personal property regulated by the commercial transactions act. Section 9-109 of the commercial transactions act specifically states that the civil code of Puerto Rico shall not apply with regard to security interests in personal property covered by the commercial transactions act. The meaning of the statute should be the starting point. The plain language of a statute is conclusive as to the meaning when the statutory scheme is coherent and consistent. Section 109-109 specifically indicates that the provisions of the civil code of Puerto Rico with respective pledges and transmissions of credits shall not apply to transactions governed by article 9. The silence in said special law as to the alleged erroneous deposit is not an opening for state law to intervene. If this were the case, then any debtor would be able to make up a letter instructing its creditor to pay a certain way in order to allege erroneous payment and be relieved from paying the banks. The purpose of the change in the commercial transactions act was precisely to protect banks and avoid extra burdens on the banks to be able to recoup their loans. Allowing this type of action would lead the bank's refusal to lend funds if they do not have a security that they will be repaid. There was no basis for the lower court to have concluded to the contrary, especially when instructions are not the type of notice or agreements contemplated by the transactions act. Avalanche has a statutory right to set off and has priority over any secured creditor. Article 9 of the Puerto Rico transactions act was amended effective January 12, 2013 before the opening of the deposit account and the granting of the line of credit and after Mapfre and Builder's agreement of indemnity. Let me stop you there counsel and see if the time has elapsed. Federal courts of appeals have held that the fact that a bank has a perfected security interest or assigned account receivables makes no difference because the bank's secured status comes into play only after it is shown that its debtor-assigner was entitled to the payment of the funds. In this case, at the time when the funds arrived at Oriental Bank, Builder's was not entitled to those funds for several reasons. Number one, they hadn't finished the project. They had defaulted on its obligation to pay the materials that material men and laborers before the authority made the erroneous payment. The surety had already sent a notice of assignment of the funds and that assignment was triggered upon the default of the contractor. After the authority received that notice of assignment, the authority could only extinguish its obligations by paying the surety. By that time, the contractor was not entitled to receive the funds. Once the authority receives the notice of assignment, the extinguishment of that obligation can only be achieved by payment to the surety and not by payment to the contractor. Are you relying on the payment and error doctrine? That doesn't sound like you are. Yes, I am. For the payment and error rule itself, are you saying the bank was the payee? No, no. I'm saying that... Under the payment and error doctrine, the person who's supposed to relinquish the funds when they were paid in error, I thought was the payee. Yeah, the payment was made in error because that payment... No, no, no. I'm not asking whether the payment was in error. I'm asking who the payee was who had the obligation to relinquish it. The payee was the contractor. It was the who? Builders. The payee was builders. But what I'm telling you is that... So how would it possibly be the case that a non-payee has an obligation under the payee and error doctrine? Because in order for them to assert their security interest... No, no. They already have the funds. They have the money now. Why would they have to relinquish it? I thought the payment error doctrine is a way of getting money back from somebody who has it. Yes, yes. Because the money now... The bank now has the money. Yeah, but there was no mutuality. They were not paid in error. There was no mutuality between the bank and the contractor. In order for the bank to be able to make a set of... There has to be mutuality under Section 553 of the Bankruptcy Code. And the money... That may be so or not. So I'm just saying the payment and error doctrine I thought is what you're relying on. Yes, yes. So I'm just trying to figure out how can the payment and error doctrine apply to the bank having the funds when the bank was not paid in error? Are you saying they were paid in error? Yeah, well, they were not entitled to seize the funds. I know that may be true. But I thought the payment and error doctrine requires you to be paid in error. So was the bank paid in error? No, but the account holder was paid in error. Therefore, the bank was not entitled... That may be a reason why you could still win under some other doctrine. But I don't quite see how the payment and error doctrine can be the way you win if the bank is who you're trying to get the money from and you're not claiming that the bank was paid in error. Well, they were to the extent that the payment reached the bank by error and the account holder is not entitled to the funds and the attaching creditor cannot be entitled to more than it's there. Therefore, they received the funds, but they weren't entitled to them because... Counsel, can you tell me why the bank's application of set-off was not permissible? Just run through your argument on that. For several reasons, Your Honor. First, in order for us under Section 53 of the Bankruptcy Code, in order for them to be able to make a set-off, there has to be a mutuality between the debt and the claim. The funds that the bank set off were not owed to builders. They were owed to somebody else, to the surety, because when those funds arrived there, they were not property of builders. They were not entitled to them because they hadn't finished the project, they had defaulted their obligations already, and because prior to the transfer, the authority had already received a notice of assignment. So, the payment by then, they were not entitled to receive that payment. It was only the surety because the surety had already notified the assignment and the authority would only extinguish its obligation by paying the assignee. After the authority receives the notice of assignment, it has to pay the assignee. If it pays the assignor, the assignor has no right after the notice is served. So, when those funds arrived, they were paid erroneously because after the authority received the notice of assignment, it has to pay to the surety, and if it pays the contractor... You're not saying the bank had notice of that, right? The bank didn't have notice of that, but in order for them to be able to set off those funds, first, there has to be mutuality, which there was not because those funds were not the property of their account holder. And also, so, under Section 553, there was no mutuality, number one. Number two, under the Segovia case, those funds were not property of the contractor. Therefore, the... Can I ask you this question, counsel? Let's say a depositor received money illegally, stole the money, and deposited. Are you saying that set off would never be appropriate if that's how the funds got into the account? Well, if the person to whom is stolen claims to the bank, yes. The bank is not entitled to a certain set of those funds. Also, under the Commercial Transactions Act, I'll tell you what, Section 9... On these, the arguments you're making now, and their answer to powers,  the District Court nor the Bankruptcy Court, neither of them relied on this theory, correct? No. Well, they did say that there was no... That the payment, the transfer was made without just cause, so... Yeah, but the sole ground they then gave was this payment-in-error doctrine. Yes, because the funds were... Because neither builders nor realtor... But you're now arguing things about set off, that all... Even if the payment-in-error... Let me put it this way. Suppose the payment-in-error doctrine has no application here, because the bank is not a payee. Can you still win? Yes. Yes, and the reason you say you can still win are the kinds of answers you gave to Judge Howard about 553 set off and mutuality, etc., right? And there's another ground, because under Section 9, that should be... The Commercial Transactions Act, it says... Provides that a security interest is enforceable only if the debtor has rights in the collateral. None of those issues have been addressed by any of the lower courts, correct? That was not the ground upon which the court, you know... All right, thank you, Counsel. Counsel, your time is up. Okay. Thank you. If you would mute your audio and your video, and Ms. Lopez-Vittoria will hear from you. Yes, if it please the court. Yeah, I join Brother Counsel Sanchez's arguments, and in this case, it was established before the District Court that the payment was made in error. Both the Bankruptcy Court and the District Court recognized that in the Commercial Transactions Act, there was no provision regarding a payment that's erroneously made, and given that, they then referred to Commonwealth law to fill that void as to how this matter would be handled. Obviously, this is a unique situation in the ordinary course of banking because this was not a progress payment for a project that was being made to a contractor who had not defaulted. Here, we had a contractor in default by virtue of the surety agreement that he had signed with, or that the builders had signed with MAFRE. The payment bond was triggered, and it was MAFRE who was entitled to receive the funds on all remaining progress payments precisely because they had already paid for materials and labor that were used on the project. That's what makes this difference. Going back to the example that I believe it was Judge Barron asked about if the contractor had been given a check, which he didn't deposit. We wouldn't even be here if that had happened. No, if he'd been given the check and then he deposited that check. Then he deposited the check, but is the check then made jointly to the builders and to the surety because that's the instruction that was supposed to have been made. They give him a check to Steve, let's say, and Steve then puts it in the bank. Steve has a debt to the bank, so the bank does set off with that funds. When Steve just deposits of the money, you'd say then still the bank has to pay it back? Well, I would say I think there's other factors that might be missing from the hypothetical that we're dealing with, and that is whether we're recognizing that the surety has a right to the funds that are being paid. We're assuming from the example that you've given that the check is just made to one party, which would be Steve. In that case... Wasn't it made to builders? Who is it made to here? Wasn't it made only to builders? No, in this case, there wasn't a check made. It was a wire transfer, an ACH transfer into... Builders alone. Builders account, correct. Yeah, so what's the difference between that and a check to builders? Theoretically, there would be no difference, except for the fact that the financing authority is recognizing... Take an example. The financing authority has a big pile of cash, and they give it to builders. Builders has all this cash, and he says, I don't want to hold the cash. So he goes to the bank, and he goes to the bank. He says, here's all this cash, put it in my account. Is your claim that the financing authority can make the bank give that cash back? I think it depends on the circumstances of the transaction. Same circumstances. All other things are the same as this, except instead of doing a direct deposit, they gave a big bag of cash to builders. Builders then went to the bank with the cash and said, I don't want to hold this. You hold it, put it in my account. Same outcome? Okay, are we still considering... Are we leaving aside the fact of the surety's entitlement to the funds? Everything that is true is identical. The only thing that didn't happen, instead of doing direct deposit to the bank, they gave cash to builders at a parking lot. And then builders took the bag of cash, went to the bank, said, here's a big bag of cash, put it in my account. Do you think the bank has to give the money back? I would think that the bank has to give the money back. Is that because of the payment in error doctrine, or is that because of other things? Like you're reading a 553, your claim about legal versus equitable, it's something else. But how is that a payment in error doctrine claim? It's a payment in error because the... The party that's paying, which is the Puerto Rico Financing Authority, knows, has knowledge, that the funds do not correspond solely to builders. That the actual... But the party you're trying to get the money from was never paid in error. They just are holding cash for somebody who was, in your view, paid in error. That's what I don't understand. Do you see what I'm saying? The bank is not a payee. Right, correct. How can the bank be subject to the payment in error doctrine? It may be that there's some other doctrine out there that limits their ability to set off an account without first checking, but I don't see how that comes from the payment in error doctrine, which is the only thing anybody's relied on in this case so far. I think the reason that they relied upon it is just because the Puerto Rico Financing Authority  as to how the funds were supposed to be dispersed. The error was in the manner in which they were dispersed. They should never have been deposited, directly deposited into a builder's account solely. You're trying to get the money back from the account holder, but you're trying to get it back from the bank. That's the problem. Right, the thing is that both things happened the same day. Literally, the ACH transfer was on... Is there some argument that the bank is a payee? Or you're not saying the bank is a payee, are you? No, no. Counselor, let me also ask you, isn't the result that's being asked here, what you're arguing, wouldn't that be placing the burden now on the banks to definitely review, determine where each single deposit is coming from? Isn't that an undue burden on Oriental here? I don't think it is, because I think that the type of situation in which this occurs is the exception, as opposed to the general rule, particularly in the construction industry, when progress payments are made. We also have to consider the fact that the security, the general agreement of indemnity that was executed between builders and MAPFRE as the surety is something that's recorded. So the bank could very easily have gone back and verified if there were any prior security interests in builder's assets when they issued the lines of credit and when they authorize the lines of credit. So what I would say as far as that goes, I don't think it's a burden if what we're dealing with is something that's out of the ordinary and is the exception rather than the norm. There's nothing under Puerto Rico law or even federal law that would require affirmatively the bank to do so. You're just saying it's a matter of effective banking practice. Am I correct? Well, I would think it would be effective banking practice, particularly given the amount of financing that's given in the construction industry. It should be a matter, of course, not only by sureties, but by banks to verify. Bank that's dealing with a contractor here in Puerto Rico knows that the contractor has surety agreements. That's not something that's exceptional to this case only. That's pretty much the norm for any project that's bonded. So that's something the bank should know. You know, when a contractor builder comes to them for financing, they should expect that there's going to be surety agreements in place for that contractor. All right. Thank you, counsel. Thank you very much. Ms. Fernandez, Ms. Lopez, if you could mute your audio and video. Sure. Good afternoon, again. Attorney Christina Fernandez on behalf of Oriental Bank. There was no payment in error made here. My first notice to the financing authority as to the payment remittance does not concern Oriental Bank or its security interest in builder's account. Section 9-340 explicitly provides depository banks the right to exercise set-offs even against proceeds of the secured party's collateral deposited in deposit account absent a contractual control agreement to the contrary. MAPFRE's alleged security interest dates August 30th, 2010 before the opening of the deposit account and before the granting of the line of credit. After the enactment of Article 9, which again, it was in January of 2012 of the Commercial Transactions Act, MAPFRE never requested from Oriental a release of the control agreement and therefore does not have and did not have control over the deposit account. Appellant's security interest and builder's interest attached when the party signed the commercial line of credit agreement and it was perfected by appellant being the bank with which the commercial deposit account is maintained. If this case involved a consumer loan and a consumer deposit account, the story will be different. Financing authority is not a creditor of builders as to the funds deposited into the account. MAPFRE does not have a senior lien as to Oriental on the funds deposited into the account. As such, there is no basis for the bankruptcy court or the district court to invalidate appellant's security interest. Due to the foregoing, appellant respectfully requests that this court reverse the district court's affirmance of the bankruptcy court's order and declare that Oriental set off the amount according to its statutory rights under Article 9 of the Commercial Transactions Act and determine that it does not need to turn over any funds to MAPFRE nor the Chapter 7 trustee. Thank you. Thank you. That concludes argument in this case. Counsel for this case is invited to leave the meeting at this time.